The opinion of the court was delivered by
Brewer, J.:
This was an action by plaintiff in error to restrain the defendant from selling certain lands for nonpaypayment of taxes for the year 1871. The petition alleges that the plaintiff oavus the lands, that they were not subject to taxation for the year 1871, that the county authorities illegally levied taxes upon them for that year, and that the defendant as county treasurer is about to( sell them for nonpayment of those taxes. A demurrer to this petition was sustained by the district court.
The demurrer admits that the allegations of the petition are true — admits that the railroad company is the owner of the land, that the land Avas not subject to taxation for the year 1871, and that the defendant was nevertheless attempting to sell for nonpayment of taxes levied for that year. Of course, if the company owns the lands, it is the party in interest, and entitled to bring this action; and if the land *125 was not subject to taxation for that year, the attempt to levy taxes upon it was illegal, and should be restrained. Yet the demurrer admits all this. The only questions then, are, whether these allegations of the petition are statements of fact which a demurrer admits, or mere legal conclusions to be treated as surplusage, and whether, if statements of facts, they are qualified and limited by other allegations of the petition.
That the allegation of ownership, is the statement of a fact, will hardly be questioned: Swan’s Pleadings, 156; Hume v. Watt, 5 Kas., 40. It seems to us also that the allegation that the land was not subject to taxation for the year 1871, must be held to b.e sufficient as against a demurrer, however much it may be liable to attack by motion: Swan’s Pl., 150, 158; Seney’s Code, 102, note e; Piatt v. Piatt, 3 Law Gaz., 140; Meagher v. Morgan, 3 Kas., 372; Marley v. Smith, 4 Kas., 183. The demurrer therefore should have been overruled, unless the other allegations in the petition so far limit and qualify these general statements as to show, eithér that the plaintiff does not own these lands, or that they wer.e really subject to taxation for that year. On examining the petition we find that it alleges that the plaintiff “received said lands by virtue of the law of congress approved March 3d, 1863, being an act entitled ’an act for a grant of lands to the state of Kansas in alternate sections to aid in the construction of certain railroads and telegraphs in said state,’ and the act of the state of Kansas approved February 9th 1864, being. an act entitled ’an act to accept a grant of lands made to the state of Kansas by the congress of the United States to aid in the construction of certain railroads and telegraphs in said state, and to apply the same to the construction of such roads and telegraphs,’ and by virtue of the treaty between the U. S. and the Great and Little Osage Indians, concluded September 29th 1865, and proclaimed January 21st, 1867, and by virtue of the construction by the plaintiff of its railroad and telegraph through said lands to the south line of the state of Kansas; and the plaintiff says that it did not *126 construct its said railroad and telegraph through said lands to the satisfaction of the secretary of the interior, neither was said railroad and telegraph through said lands accepted by the governor of the state of Kansas, neither did the plaintiff become entitled to receive the title to said lands, until the month of December 1871, and that said lands were not conveyed to it by the governor of the state of Kansas until March 1872. And the plaintiff further says, that the right of the plaintiff to receive said lands under said laws, treaty, and construction of its road and telegraph, was contested by various parties before said secretary of the interior, and that the final decision awarding said lands to the plaintiff was not made until January 20th, 1872.” There is nothing in all this which tends to show that these lands were taxable in 1871, or to limit the previous'''general allegation that they were not subject to taxation for that year. It does present however a very serious question as to whether it does not show that the company has no title whatever to these lands, and therefore no right to maintain this action. It does not appear from this petition whether these lands are all within, or all without, or part within and part without, the limits of the tract formerly owned by the Osage Indians, and covered by the provisions of the treaty of 1865. If they are without those limits, then it is easy to see how title could pass by the grant of congress, the acceptance by the state, and the construction of the road. If they are within, then it may not be so easy to see how any title could thus pass to the company. Outside of this case, (for counsel are silent in their briefs as to the effect of the treaty provisions on the question of title, and in fact ignore the treaty entirely,) we are aware that a grave controversy is pending as to the title of these lands. We know as a matter of public history, as well as from the petition, that the secretary of the interior has declared that title to lands covered by that treaty did pass to plaintiff on the completion of its road, and we do not decide that it did, nor that it did not. We shall not decide a question of that importance until it is fairly before us. *127 And as it does not appear whether any or all of these lands are within the Osage lands, and as title to lands without might readily pass by the grant, the act of acceptance, and the construction of the road, we hold that the general allegation of ownership, admitted by the demurrer to be true, is not so far limited or qualified by the'subsequent allegations as to avoid the effect of the admission.
The judgment of the district court will therefore be reversed, and the case remanded for further proceedings.
All the Justices concurring.